**Theodore S. PAPAILA, Plaintiff,**

v.

**UNIDEN AMERICA CORPORATION, Defendant.**

No. 4:93–CV–336–A.

United States District Court, N.D. Texas, Fort Worth Division.

Jan. 10, 1994.

---

Grace Isabella Fell, Kurt Compton Banowsky, Law Office of Janette Johnson, Dallas, TX, for plaintiff.

Richard Matthew Kobdish, Jr., Rebecca Ann Siegel, Fulbright & Jaworski, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on to be considered in the above-styled and numbered action the motion of defendant, Uniden America Corporation, ("Uniden") for summary judgment. The court having considered the motion, the response of plaintiff, Theodore S. Papaila, ("Papaila") the summary judgment evidence, the record, and applicable authorities, has concluded that the motion should be granted in part, as set forth herein.

## I.

### Plaintiff's Complaint

Papaila makes the following allegations in his first amended complaint:

On May 3, 1988, he entered into a contract of employment with Uniden. Uniden breached the contract on April 1, 1992, by unilaterally reducing plaintiff's compensation plan, and by demoting him to the position of Vice President, International Sales, Mexico, Telektra Account. On January 3, 1993, Uniden again breached the contract by discharging him. Uniden engaged in a continuing pattern of discriminatory conduct against Papaila because of his age, forty-six, his race, white, and his national origin, American; and, Uniden discriminated against him in the terms, conditions and privileges of his employment and by demoting and discharging him.

Papaila asserts a cause of action pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII") based on the alleged race and national origin discrimination; and, he asserts a cause of action pursuant to 29 U.S.C. § 621 *et seq.* ("ADEA") based on the alleged age discrimination. He claims that Uniden has violated the Texas Commission on Human Rights Act of 1983 ("TCHRA"), Tex.Rev.Civ.Stat.Ann. art. 5221k, § 1.01 *et seq.* by discriminating against him on the basis of age, race, and national origin.

## II.

### The Motion for Summary Judgment and Plaintiff's Response

A. Uniden maintains that Papaila was an at-will employee and any alleged modification of such status through an employment contract is unenforceable by reason of the statute of frauds. To defeat the assertion that he was an at-will employee, Papaila relies on oral representations made to him by Yuzo (Nick) Noda ("Noda"), an Executive Vice President of Uniden, and a letter he sent to Noda confirming those representations. He contends that his intent that the letter form a contract between him and Uniden, coupled with the handwritten notations and changes he says were made by Noda to the letter,

constitute sufficient evidence to defeat Uniden's motion for summary judgment.

B. According to Uniden, the Friendship, Commerce and Navigation Treaty between the United States and Japan, Apr. 2, 1953, ("FCN Treaty") 4 U.S.T. 2063 allows it to exercise the rights of Uniden Corporation ("Uniden Japan"), its parent corporation, to favor citizens of Japan in matters relating to employment, and, therefore, it cannot be liable for discriminating against Papaila on the basis of his race and national origin. Papaila maintains that Uniden does not have standing to assert such treaty rights and that, even if it did, Title VII supersedes the FCN Treaty.

C. Further, Uniden contends that Papaila's demotion was made for legitimate business reasons. Papaila has failed to respond to that contention. Finally, Uniden contends that because, after his termination, Papaila's job responsibilities were assumed by Don Huffman ("Huffman"), who is nine years older than Papaila, Papaila is unable to prove a *prima facie* case of age discrimination. Papaila responds by arguing that the summary judgment evidence raises an issue of fact that his discharge was because of his age.

\* . \* \* \* \* \*

At the pretrial conference held in this action on January 4, 1994, the court made known its tentative views that Uniden's motion for summary judgment has merit as to the claims discussed in A. and B. above. The court has concluded that the motion for summary judgment should be granted as to those grounds. The court is not prepared at this time to rule on the ground of Uniden's motion asserting entitlement to summary judgment as to Papaila's age discrimination claims. The rulings in this memorandum opinion and order are limited to the grounds of Uniden's motion that are described in A. and B. above.

## III.

### The Summary Judgment Evidence Pertinent to the Grounds of Uniden's Motion Dealt with by this Memorandum Opinion and Order

The summary judgment evidence of Uniden consists of (i) plaintiff's responses to

interrogatories, (ii) a letter clarifying plaintiff's answer to interrogatory No. 34, (iii) a letter from Papaila to Noda accepting Uniden's offer of employment, (iv) a copy of the complaint filed by Papaila with the Texas Commission on Human Rights and the EEOC, (v) Papaila's affidavit in support of such complaint, (vi) Papaila's letter to Ms. Vivian Moore, an investigator with the EEOC, (vii) the affidavit of Kazunari Ikeda, Uniden's Director and Vice President, (viii) the affidavit of Katrina G. Desjardin, Uniden's Employment Manager, and (ix) excerpts from the oral depositions of Steven E. Fulford ("Fulford"), Corporate Vice President and General Manager of the Corporate Communication Division, and Susamo Ohashi ("Ohashi"), Managing Director of Uniden Japan and President of Uniden America Corporation. Papaila's summary judgment evidence consists of excerpts from the oral depositions of (i) Robert J. Gibbs, Executive Vice President of Uniden, (ii) Thomas Carrello ("Carrello"), Vice President of Canadian Operations for Uniden, (iii) Papaila, (iv) Fulford, (v) Huffman, Vice President, International Sales, (vi) Ohashi, and (vii) Dr. Carl Swanson, an expert for Papaila. The summary judgment evidence shows without dispute that:[1]

Uniden is an Indiana Corporation and a subsidiary of Uniden Japan, which is a Japanese corporation with its headquarters in Tokyo, Japan. Uniden Japan is engaged in the business of manufacturing and selling a variety of electronic equipment.

Papaila is a white United States citizen of American national origin. On April 20, 1988, Uniden made an oral offer of employment to Papaila, which he accepted. The writing upon which Papaila bases his claim for breach of contract is a letter dated May 3, 1988, from Papaila to Noda. No one acting for Uniden signed this letter. Papaila testified by deposition that Noda orally agreed to the terms in the letter.

From June 1988 through March 1990 Papaila held the title of Vice President–Government Sector or of Vice President Market Development. From April 1990 through March 1992 Papaila held the position of Vice President Marketing for Uniden's Commercial Communication Division. During 1991 and 1992, Uniden Japan placed pressure on Uniden to eliminate employees who were not assigned individual quota or who were not meeting their quota. On April 1, 1992, Papaila was placed in the position of Vice President International Sales–Telektra. He reported directly to Huffman, and such position had an individualized quota and a lower salary. This is the demotion upon which Papaila bases—part of his claims.

On October 6, 1992, Fulford and Huffman sent a memo to Papaila stating that he had not made his quota in the first and second quarters of that year and inquired how he intended to meet his quota thereafter. In December 1992, it appeared that Papaila was not going to meet his third-quarter quota. In an attempt to assist Papaila to make his third-quarter quota, Fulford and Huffman went to Mexico to meet with Telektra representatives with the hopes of persuading them to buy additional products from Uniden. Papaila made approximately 85.2 percent of his quota for the third quarter. On January 3, 1993, Papaila was terminated. The reason given was that upper management had lost confidence in him.

Uniden has approximately 400 employees of which sixteen are on temporary work assignments sent to Uniden by Uniden Japan. Such employees are all Japanese citizens who have been sent by Uniden Japan in order to protect its interests in its subsidiary. The parties refer to such Japanese citizens as Japanese expatriates. Uniden does not dispute that such employees were treated differently than American employees, and the only basis for Papaila's claims of race and national origin discrimination is the preferential treatment given to Japanese expatriates. The Japanese expatriates were sent to Uniden on temporary work assignments by Uniden Japan. The remainder of Uniden's em-

---

1. Many of these facts have also been stipulated to by the parties in their agreed "pretrial order," and during the pretrial conference held on January 4, 1994. The court has also considered as part of the summary judgment record admissions made by plaintiff in his complaint and in his response to Uniden's motion.

ployees, including six of Japanese origin, were under the direct control of Uniden. The six Uniden employees of Japanese origin were treated exactly the same as all of Uniden's employees and do not receive the same treatment as the Japanese expatriates.

## IV.

*Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The movant may discharge this burden by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. An issue is material only if its resolution could affect the outcome of the action. *Id.* at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir. 1984).

The Fifth Circuit explained the burden placed on the nonmovant:

> When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential ele-

ment of the nonmoving party's case necessarily renders all other facts immaterial." *McKee v. City of Rockwall, Texas,* 877 F.2d 409, 414–15 (5th Cir.1989) (quoting *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990).

## V.

*Analysis*

A. *Breach of Contract:*

The general rule in Texas is that employment is terminable at will at any time by either party, with or without cause, absent an agreement to the contrary. *See Federal Express v. Dutchmann,* 846 S.W.2d 282 (1993); *Eastline & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888); *see also Benoit v. Polystar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). The parties may, either in writing or orally, modify the at-will employment status of an employee. *Goodyear Tire & Rubber Co. v. Portilla,* 836 S.W.2d 664 (Tex.App.—Corpus Christi 1992); *Johnson v. Ford Motor Co.,* 690 S.W.2d 90 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). However, if the term of contracted employment is intended to exceed one year, the employment contract must be in writing. *See* Tex.Bus. & Comm.Code Ann. § 26.01(b)(6) (Vernon 1987); *Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990); *Bowser v. McDonalds Corp.,* 714 F.Supp. 839, 842 (S.D.Tex.1989). When there is an agreement to retain an employee until he retires, and the retirement will not occur within one year, the statute of frauds requires a writing. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). The writing must be signed by the party to be charged, or by someone lawfully authorized to sign for him. Tex.Bus. & Comm. Code Ann. § 26.01(a)(2) (Vernon 1987). *See also Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12 (1957).

Papaila asserts, in effect, that Uniden contracted with him to employ him until his retirement. At the time the alleged contract was made, Papaila was forty-two years old; and, the retirement age under Uniden's

401K plan was fifty-nine and one-half. Because he could not have retired within one year, any such contract must conform to the statute of frauds. *See* Tex.Bus. & Comm. Code Ann. § 26.01 (Vernon 1987). The letter upon which Papaila relies to meet the writing requirement was from him to Uniden. It was not signed by anyone on behalf of Uniden.[2] Therefore, there is no summary judgment evidence of an enforceable employment contract. *See* Tex.Bus. & Comm.Code Ann. § 26.01(a)(2). Papaila has also alleged that Uniden breached an employment contract with him by demoting him on April 1, 1992. However, he has failed to produce any summary judgment evidence on, or even argue the terms of, any contract that would have been breached by the demotion. Such unsupported allegations, conclusory in nature, are insufficient to defeat Uniden's motion for summary judgment. *See Simmons*, 746 F.2d 265. Thus, the court has concluded that Uniden is entitled to summary judgment as to the breach of contract claims.

**B.** *Discrimination Based on National Origin and Race:*

■■■ Title VII provides that it shall be unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Uniden contends that, despite the prohibition in Title VII against discrimination based on race or national origin, article VIII(1) of the FCN Treaty entitles it to treat Japanese expatriates differently than American workers. Article VIII(1) of the FCN Treaty provides in pertinent part:

> [C]ompanies of either party shall be permitted to engage, within the territories of the other party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice.

■■■ This article of the FCN Treaty applies only to companies of one of the treaty countries operating in the other country.

*Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 182, 102 S.Ct. 2374, 2378, 72 L.Ed.2d 765 (1982). In *Sumitomo Shoji* the Court held that local subsidiaries are considered for purposes of the FCN Treaty to be companies of the country in which they are incorporated. *Sumitomo Shoji*, 457 U.S. at 188, 102 S.Ct. at 2381. Thus, a subsidiary incorporated in the United States is not directly covered by article VIII(1). *Id.* at 183, 102 S.Ct. at 2378. The Court, however, left open the question as to whether an American company may assert the article VIII(1) rights of its parent Japanese company. *Id.* at n. 19.

The only reported court opinion that specifically addresses the issue as to whether a United States corporation can assert the article VIII(1) rights of its parent Japanese corporation is the Seventh Circuit's opinion in *Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir.1991). In *Fortino*, the court held that an American subsidiary of a Japanese parent company must be allowed to assert the article VIII(1) FCN Treaty rights of its parent. *Fortino*, 950 F.2d at 393. The court concluded that a judgment forbidding the American subsidiary from giving preferential treatment to the expatriate executives sent by its parent to work for the subsidiary would have the same effect on the parent as it would have if it ran directly against the parent—it would prevent the parent from sending its own executives to manage its American business in preference to employing United States citizens. *Id.* This court finds the Seventh Circuit's reasoning persuasive and concludes that Uniden must be allowed to assert the treaty rights of Uniden Japan in order to "prevent the treaty from being said at naught." *Id.* Having determined that Uniden must be allowed to assert the treaty rights of Uniden Japan, the court must now determine what those rights are.

■■■ The "of their choice" language in article VIII(1) does not mean that a Japanese company has a blanket authority to discriminate against individuals based on their race, color, religion, sex, or national

---

**2.** Although there are some handwritten notations on the letter, there is no summary judgment evidence as to who made such notations or what they mean.

origin as such discrimination would clearly be in violation of Title VII. The FCN Treaty language does, however, mean that "[c]ompanies have a right to decide which executives and technicians will manage their investment in the host country, without regard to host country laws."[3] *Spiess v. Itoh & Co., Inc.,* 643 F.2d 353, 361 (5th Cir.1981), *vacated on other grounds,* 457 U.S. 1128, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982); *see also Fortino,* 950 F.2d at 389; *MacNamara v. Korean Air Line,* 863 F.2d 1135 (3rd Cir.1988).

Article VIII(1) exempts the entity asserting such rights "from domestic employment discrimination laws to the extent of permitting discrimination in favor of Japanese citizens in employment for executive and technical positions." *Spiess,* 643 F.2d at 359.[4]

In this case Uniden Japan exercised its rights under the FCN Treaty to choose citizens of its own nation, because they are such citizens, to operate its business in the United States. "This was favoritism all right, but discrimination in favor of foreign executives given a special status by virtue of a treaty and its implementing regulations is not equivalent to discrimination on the basis of national origin." *Fortino,* 950 F.2d at 392; *see Spiess,* 643 F.2d at 389. Papaila has failed to adduce summary judgment evidence that any of Uniden's employees of Japanese origin, but not Japanese citizens, were in any way favored by Uniden. To the contrary, the summary judgment evidence shows that such employees were treated the same as all other Uniden employees of non-Japanese citizenship. *See Fortino,* 950 F.2d at 389.

The court concludes that Uniden is entitled to assert the FCN Treaty rights of its parent corporation and that such treaty rights include the right to discriminate in favor of Japanese citizens. Therefore, Uniden is entitled to summary judgment as to Papaila's claim of discrimination in violation of Title VII.

Treaties such as the FCN Treaty are "the supreme law of the land," and supersede inconsistent state law. U.S. Constitution art. 6, cl. II; *United States v. Pink,* 315 U.S. 203, 230, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942); *DeTenorio v. McGowan,* 510 F.2d 92, 95 (5th Cir.1975). The court concludes, therefore, that Uniden is entitled to summary judgment on Papaila's claim of discrimination on the basis of race and national origin brought pursuant to the TCHRA.

## VI.

### *Order*

For the reasons discussed herein, the court ORDERS that the motion of Uniden for summary judgment be, and is hereby, granted as to Papaila's claims for breach of contract and discrimination on the basis of race and national origin.

The court has under advisement the ground of Uniden's motion for summary judgment pertaining to Papaila's age discrimination claim.

---

**3.** Papaila argues that there is a conflict between the treaty and Title VII and that Title VII should prevail because it was enacted after the treaty was signed. "Only when Congress clearly intends to depart from the obligations of a treaty will inconsistent federal legislation govern." *Spiess,* 643 F.2d at 356. There is no such intent in Title VII. *See id.*

**4.** Because the Supreme Court vacated and remanded the case on other grounds, the Fifth Circuit's ruling on this issue remains valid, controlling law. *See Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1548 n. 8 (E.D.N.Y.1990).